# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AKHENATON JONES, | : | |
|    *Plaintiff,* | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 23-CV-3851 |
| | : | |
| CORRECTIONAL OFFICER | : | |
| THOMPSON, *et al.*, | : | |
|    *Defendants.* | : | |

## MEMORANDUM

**Pappert, J.**                                                                                                                       **August 8, 2024**

      Akhenaton Jones, a pretrial detainee housed at the Riverside Correctional Facility, filed this lawsuit against the City of Philadelphia and others asserting constitutional claims pursuant to 42 U.S.C. § 1983. He alleges he was subjected to excessive force while housed at the Philadelphia Industrial Correctional Center ("PICC") and denied medical attention for his injuries. (*See* Compl., ECF No. 2.)

      The City and its Prisons Commissioner move to dismiss (ECF 13) and the Court grants the motion in part and denies it in part.

      Given Jones' status as a pretrial detainee, his efforts to identify other defendants and the case's procedural posture, the City must produce limited early discovery and Jones may amend his Complaint.

I[1]

---

[1] The facts set forth in this Memorandum are taken from Jones's Complaint (ECF No. 2). The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system. Additionally, the Court includes facts reflected in publicly available state court records, of which this Court may take judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

Jones names as Defendants the City of Philadelphia, Commissioner of the Philadelphia Department of Prisons Blanche Carney; three PICC corrections officers for whom Jones only provides a last name: CO Thompson, CO Jackson, and Lt. Gregory; two other John Doe corrections officers whom he identifies as Sergeants; a Lieutenant John Doe; four John Doe Nurses; and the John Doe PICC Warden.  (*Id.* at 2-4.)

Jones claims he was subjected to excessive force at PICC on two separate occasions. First, he alleges that on August 29, 2021, Thompson sprayed him in the face with O.C. gas, struck him in the head with a metal canister, and punched him multiple times.  (*Id.* at 8.)  One Doe Sergeant and Lt. Gregory allegedly witnessed the incident and failed to intervene.  (*Id.*)  Jones asserts that following the August incident, he was moved to another cell block "to be separated from CO Thompson." (*Id.*)  Second, Jones alleges that on November 11, 2021, despite the separation order, Lt. Doe permitted Thompson to work on the new block where Jones was housed.  (*Id.*)  On that date, Thompson and Jackson came to Jones's cell and verbally threatened him, after which Jones complained to a Sgt. Doe about the threat and said that Thompson's presence on his new cell block violated his "separation order from CO Thompson."  (*Id.*)  Jones claims that shortly after he spoke to Sgt. Doe, Thompson and Jackson returned and dragged him out of the cell, then punched, kicked, and stomped him, breaking his rib.  (*Id.*)

Jones further alleges that when he told medical staff about his injuries from the November incident, "including difficulty breathing, blurred vision, vertigo, severe chest pain[,] and a visible protrusion in the diaphragm," he was told by a Doe Nurse to "just breathe slow." (*Id.*)  Finally, Jones contends the City and Commissioner Carney "have long been on notice to reform the problems and systemic failures" at PICC that have

resulted in "a well documented history of such abuses," but have failed to discipline "bad actors." (*Id.*)

On February 8, 2024, the Court granted Jones's motion to proceed *in forma pauperis* and, in accordance with 28 U.S.C. § 1915(d) and Federal Rule of Civil Procedure 4(c)(3), directed the U.S. Marshals Service to serve Jones's Complaint on the City, Carney, Thompson, Jackson, and Gregory. (ECF No. 10 at 2.) The Court also noted that service could not be made on the remaining Doe Defendants without sufficient identifying information. (*Id.*) The U.S. Marshal's USM-285 return receipt indicated that the City and Carney accepted service via electronic means. (ECF No. 12 at 1-2.) However, Thompson, Jackson, and Gregory could not be located and therefore were not served, because there are "multiple employees with [the] same name." (*Id.* at 3-5.)

Defendants Carney and the City have moved to dismiss the complaint for failure to state a claim and Jones responded. (ECF Nos. 13, 18.) Included in Jones's Response is a request "for adequate discovery regarding [his] claims," including time cards, work assignments, incident reports, and records of any disciplinary proceedings reflecting activity on the dates of the alleged uses of force against him in August and November, 2021. (ECF No. 18 at 4-5.)

II

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up); *see also Vogt v. Carney*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally). Additionally, since Jones is proceeding *in forma pauperis*, the Court may independently screen his complaint and dismiss it "at any time" pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) if, among other things, it fails to state a claim. *Brown v. Sage*, 941 F.3d 655, 662 (3d Cir. 2019) (*en banc*). The standard under this screening provision is the same standard that governs a dismissal under Rule 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

III

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original).

A

As an initial matter, Defendants assert that any claims related to the incident on August 29, 2021, are barred by the statute of limitations. (ECF No. 13 at 5-6.) "A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). The timeliness of a § 1983 claim is governed by the limitations period applicable to personal injury actions of the state where the cause of action arose. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). Pennsylvania's two-year statute of limitations applies to these claims. *See* 42 Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007).

A claim accrues "when a plaintiff has a complete and present cause of action, that is, when [he] can file suit and obtain relief." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (quotations omitted). Those of Jones's claims related to the alleged use of force on August 29, 2021, accrued on that date. *See LeBlanc v. Snavely*, 453 F. App'x 140, 142 (3d Cir. 2011) (*per curiam*) ("Claims for false arrest and assault

(which would include LeBlanc's excessive force claim) typically accrue on the date of the arrest or the assault, because, at that point, the plaintiff has reason to know of the injury."); *see also Hickox v. Cnty. of Blair*, 591 F. App'x 107, 110 (3d Cir. 2014) (*per curiam*) ("Hickox's cause of action accrued on November 13, 2010, the date on which he alleges he was injured by the defendants' actions."). A prisoner's complaint is considered filed at the time he hands it over to prison authorities for forwarding to the Court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Moody v. Conroy*, 680 F. App'x 140, 144 (3d Cir. 2017) (*per curiam*) ("Under the prison mailbox rule, . . . a pleading is deemed filed at the time a prisoner executes it and delivers it to prison authorities for mailing.").

Here, absent tolling, the two-year limitations period for any claims related to the August, 29, 2021 incident ran until August 29, 2023. Jones does not specify the date on which he placed his Complaint in the prison mail, but he signed it on August 30, 2023, and it was received by the Court on October 2, 2023.[2] (Compl. at 13-14.) As either date is outside the two-year limitations period, the Court will address whether the claims related to the incident on August 29, 2021, are untimely on their face.[3]

Relevant here, prisoners seeking to challenge the conditions of their confinement are subject to the Prison Litigation Reform Act, which mandates exhaustion of all available administrative remedies before bringing a lawsuit. 42 U.S.C. § 1997e(a).

---

[2] The postmark on the envelope Jones sent is illegible. (*See* Compl. at 14.)

[3] Defendants erroneously cite to a case involving a non-prisoner *pro se* plaintiff, in an attempt to ascribe a later date upon which Jones's Complaint was "formally filed." *See* ECF No. 13( at 6 & n.1 (citing *Wyche v. City of Phila.*, No. 15-3900, 2016 WL 928668, at *2 (E.D. Pa. Mar. 10, 2016)).) This argument is inapposite, as it ignores Jones's incarceration and the applicable prison mailbox rule.

"The [Pennsylvania Department of Corrections] has a grievance policy involving a three-step process that an inmate must fully complete in order to properly exhaust his administrative remedies under the PLRA." *Jackson v. Carter*, 813 F. App'x 820, 823 (3d Cir. 2020) (*per curiam*). An inmate must file an initial written grievance, appeal to the facility manager, and file a final written appeal to the Secretary's Office of Inmate Grievances and Appeal. *Id.*; *see also Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 151 (3d Cir. 2016) (describing DOC grievance process in more detail). "[T]he PLRA is a statutory prohibition that tolls Pennsylvania's statute of limitations while a prisoner exhausts administrative remedies." *Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 603 (3d Cir. 2015).

Jones pleads that he filed grievances at PICC concerning his claims that went "ignored and not responded to according to grievance policy," and that he "wrote letters and appeals . . . and completed the grievance process formally and lawfully." (Compl. at 9.) Defendants do not address Jones's assertion that he availed himself of the grievance process, which would toll the limitations period. Although Jones does not state the dates on which his grievances were filed or he received any response, a plaintiff "need not anticipate or overcome affirmative defenses; thus a complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense." *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014); *see also Talley v. Clark*, --- F.4th ---, No. 19-3797, 2024 WL 3611794, at *4 (3d Cir. Aug. 1, 2024) ("The Supreme Court has explained that the ordinary pleading rule—that a plaintiff need not plead the absence of an affirmative defense or otherwise plead around it—applies in the PLRA context.").

7

Jones's allegation that he grieved his claims could provide a basis for tolling the limitations period and any claims related to the August 29 incident are not untimely on the face of the Complaint.

B

The Court understands Jones to assert against the City and Commissioner Carney a claim for municipal liability.[4] To state a plausible claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). It is not enough, however, to allege the existence of a policy or custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.* Allegations that simply paraphrase the standard for municipal liability are too vague and generalized to support a claim against the

---

[4] Jones's claims against Carney appear to have been brought in her official capacity, making them essentially indistinguishable from his claims against the City. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." (internal quotations omitted)); *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("To determine whether a plaintiff sued state officials in their official capacity, we first look to the complaints and the course of proceedings." (internal quotations omitted)).

City. *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at \*7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*." (citing, *inter alia*, *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009)). "It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." *See Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 238 n.15 (3d Cir. 2013).

A plaintiff may also state a basis for *Monell* municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

> As the United States Court of Appeals for the Third Circuit stated,
>
> If the alleged policy or custom at issue is a failure to train or supervise (as it is here), the plaintiff must show that this failure "amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "Ordinarily," this requires a plaintiff to identify a "'pattern of similar constitutional violations by untrained employees'" that "puts municipal decisionmakers on notice that a new program is necessary." *Id.* at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). Otherwise, the plaintiff needs to show that failure to provide the identified training would "likely . . . result in the violation of constitutional rights"—i.e., to show that "the need for more or different training [was] so obvious." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

*Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020).

Jones bases his purported *Monell* claim on the assertion that the City and Commissioner Carney "have long been on notice to reform the problems and systemic failures" at PICC that have resulted in "a well documented history of such abuses," but they have failed to discipline "bad actors." (Compl. at 8.) Jones's *Monell* claim fails because his allegations are vague, generalized, and conclusory. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (holding that "vague assertions" of a policy or custom, without more, are not sufficient to state a claim under *Monell*); *Ekwunife v. City of Philadelphia*, 245 F. Supp. 3d 660, 674 (E.D. Pa. 2017) ("These conclusory allegations, which merely parrot the standard of liability, are insufficient to state a claim for § 1983 liability under Monell"), *aff'd*, 756 F. App'x 165 (3d Cir. 2018) (*per curiam*).

Moreover, Jones has not alleged facts that tie any of these conditions to his alleged constitutional harm. In other words, he has not alleged the requisite affirmative link between a City policy or custom and the various alleged constitutional deprivations. The absence of specific allegations about causation is fatal to Jones's municipal liability claim. *See Wood v. Williams*, 568 F. App'x 100, 105 (3d Cir. 2014). Jones will be allowed to amend his complaint as outlined below, should he wish to re-plead the Monell claim.[5]

---

[5] Jones did not indicate whether he also intended to sue Carney in her individual capacity. To the extent that the Complaint could be construed to assert an individual-capacity claim against Carney for a failure to supervise employees of the Department of Prisons, Jones has not alleged all the elements of such a claim. Liability under § 1983 cannot be predicated on a *respondeat superior* basis. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015). Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766

C

The remaining allegations concern Jones's direct claims against a Warden, various corrections officers, and medical staff for excessive force, failure to intervene, and deliberate indifference to his medical needs.[6] Jones's claims against the Warden and three of the four Doe nurses fail because he has not alleged any facts which could show their personal involvement in events giving rise to his claims. *Iqbal*, 556 U.S. at

---

F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). This type of liability includes a failure to supervise, however, a plaintiff asserting such a claim must "identify a supervisory policy or practice that the supervisor failed to employ, and then prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Id.* at 317; *see also Chavarriaga*, 806 F.3d at 227. A supervisory claim requires "a showing that there was an actual constitutional violation at the hands of subordinates" before finding liability on the part of the supervisor prison official. *Allen v. Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (*per curiam*) (concluding that failure to train and supervise claims asserted against supervisor defendants were meritless where the plaintiff failed to make a plausible showing of an underlying constitutional violation). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))). As pled, Jones's allegations against Carney are insufficient under either theory of liability.

[6] Although Jones cites various other constitutional provisions, his claims arise under the Fourteenth Amendment, since he was a pretrial detainee during the relevant period. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) (holding that the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees).

676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Here, the facts alleged in the Complaint are sufficient at this stage for Jones's claims to proceed beyond statutory screening against the remaining Defendants, but these Defendants are insufficiently identified for the purposes of service. Although Jones is entitled to service by the United States Marshals Service, *see* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3), the City of Philadelphia has indicated that it cannot accept service of the Summonses and Complaint without more precise identifying information for the three individual Defendants identified only by their last names—Thompson, Jackson, and Gregory—because there are multiple City employees with the same name. Moreover, the Marshals Service is not able to serve any of the remaining Defendants—the two Sergeants, a Lieutenant, and a Nurse—without any further description. In order to facilitate a more effective attempt at service by the Marshals, the Court looks to the approach taken by the Second Circuit Court of Appeals in *Davis v. Kelly*, 160 F.3d 917 (2d Cir. 1998).

In *Davis*, the Second Circuit recognized that under certain circumstances a court should not dismiss otherwise colorable § 1983 claims against supervisory personnel, who are not alleged to otherwise have personal involvement, until a *pro se* plaintiff has been afforded an opportunity, at least through limited discovery, to identify the subordinate officials who have personal liability. *Id*. at 920-21 (observing that "courts have pointed out the appropriateness of maintaining supervisory personnel as defendants in lawsuits stating a colorable claim until the plaintiff has been afforded an opportunity through at least brief discovery to identify the subordinate officials who have personal liability").

The Third Circuit Court of Appeals has not explicitly adopted this approach, though in *Wyatt v. Municipality of Commonwealth of Philadelphia*, 718 F. App'x 102, 103-04 (3d Cir. 2017) (*per curiam*), the Court recognized the difficulties presented where a *pro se* plaintiff could only provide limited information for the Marshals Service to serve defendants identified as employees of the City of Philadelphia. When the City claimed it could not accept service without the defendants' full names, and the *pro se* plaintiff could not provide that information, the district court dismissed the complaint for failure to timely effect service under Federal Rule of Civil Procedure 4(m). *Id.* at 104. Thereafter, Wyatt filed a separate suit against the City for failing to accept service in the original action. *Id.* After the second suit was dismissed, Wyatt appealed.

The Third Circuit noted that where a *pro se* plaintiff initially sued prison officials in their official capacities, he "effectively sought relief against the City." *Id.* The Court vacated and remanded Wyatt's subsequent action and directed the district court to consolidate the cases, noting that "[n]ow that the City will be a defendant, service on the City itself should be easily effected and the City should take appropriate steps to identify the individual defendants based on the information Wyatt has provided." *Id.* at 105. Based on *Wyatt*, the Third Circuit seems to have implicitly sanctioned the use of the City of Philadelphia as a placeholder for the unknown defendants for the limited purpose of assisting the *pro se* plaintiff to obtain sufficient information to identify the defendants in order to effect proper service.

This remedial aspect of *Wyatt*, and the case's subsequent history, inform the steps the Court may take here. *See Wyatt v. Municipality of Commonwealth of Philadelphia*, No. 14-1205, 2021 WL 1210251, at *2 (E.D. Pa. Mar. 31, 2021) (detailing the exhaustive steps taken on remand by the district court and the City to identify

13

defendant corrections officers, including holding hearings and providing plaintiff with discovery in the form of employee rosters, photographs, log books, and prison medical records). These steps accord with the approach of many courts of appeals affording litigants the assistance of a district court in identifying defendants via orders that instruct existing, named municipal defendants to provide limited discovery to aid that purpose. *See Valentin v. Dinkins*, 121 F.3d 72, 75-76 (2d Cir. 1997) (collecting cases and ordering remand for limited discovery to assist in identifying defendants).

Given *Davis*, *Wyatt*, and *Valentin*, the Court will maintain the City as a Defendant and direct the City to provide early discovery to Jones for the limited purpose of identifying Thompson, Jackson, and Gregory, Lt. Doe, and the Sgt. Does.[7] *See Alston v. Parker*, 363 F.3d 229, 233 & n.6 (3d Cir. 2004) (explaining that district courts should "strongly consider granting" early discovery to identify unknown defendants in pro se civil rights cases filed by incarcerated litigants "who often face informational disadvantages" and who "may be unaware of the identities and roles of relevant actors and [who], owing to their incarceration or institutionalization, [are] unable to conduct a pre-trial investigation to fill in the gaps"), *abrogated on other ground by Iqbal*, 556 U.S. at 678; *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 790 (7th

---

[7] Although discovery generally does not occur in a case until the defendants have been served, Federal Rule of Civil Procedure 26(d) permits courts to depart from this time-frame under a "good cause" standard. *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 24-976, 2024 WL 1447172, at *2 (D.N.J. Mar. 6, 2024) (describing the circumstances in which a court may permit early discovery); *see also Robson Forensic, Inc. v. Shinsky*, No. 22-1309, 2022 WL 1198228, at *3 (E.D. Pa. Apr. 22, 2022) (same); *Curran v. Venango Cnty.*, No. 23-00019, 2023 WL 3166419, at *1 (W.D. Pa. Apr. 28, 2023) ("[C]ourts generally grant the plaintiff an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." (internal quotations omitted)). The Court does not include the remaining Nurse Doe in this group because it appears the nurse is an employee of the company that contracts with the City to provide health care in its jails, not an employee of the City.

Cir. 1995) ("[I]t is far more difficult for a prisoner to write a detailed complaint than for a free person to do so, and again this is not because the prisoner does not know the law but because he is not able to investigate before filing suit. We think it is the duty of the district court to assist him, within reason, to make the necessary investigation.").

The Order accompanying this Memorandum provides additional instructions. At such time that Jones is able to identify these Defendants, the Court will dismiss the City as a placeholder for them. Should Jones still be unable to identify these Defendants after reasonable discovery efforts, the Court will entertain appropriate motions from the Defendants.

IV

For the foregoing reasons, the Court will grant Defendants' motion as to Jones's municipal liability claims, with leave to amend. The motion is denied in all other respects. As outlined further in the Order accompanying this Memorandum, the City will remain as a Defendant in this action for the purpose of providing limited discovery in aid of identifying the unserved Defendants. The City will have thirty (30) days from the date of the Order to furnish Jones with this discovery. Jones will have sixty (60) days from the date of the Order to amend his Complaint, both as to identifying the unserved Defendants and otherwise in accordance with this Memorandum. The amended complaint must contain all claims Jones wishes to assert, because it will replace, not supplement, the original Complaint. *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (explaining that "an amended pleading supersedes the original pleading and renders the original pleading a nullity" such that "the most recently filed amended complaint becomes the operative pleading").

This means that if Jones is able to identify the remaining Doe Defendants from the discovery provided by the City, he should name them as Defendants in the amended complaint if he still seeks to sue them and reassert any and all factual bases for his claims against them. Once filed, the Court will screen the amended complaint and, if necessary, issue an order regarding new service documents for the newly named Defendants to effect service by the U.S. Marshals Service.

**BY THE COURT:**

*/s/ Gerald J. Pappert*
**Gerald J. Pappert, J.**